```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


RICHARD W. STODULSKI, JR.      :      CIVIL ACTION
                               :
            v.                 :
                               :
MEDLINE INDUSTRIES, INC.,      :
et al.                         :      NO. 10-2870
```

<u>MEMORANDUM</u>

McLaughlin, J.                                    November 28, 2011

   This case arises out of a series of grievances that the plaintiff had with his former employer and resulted in the filing of a charge of discrimination with the Equal Employment Opportunity Commission. After an investigation by the EEOC, the plaintiff filed suit in this Court against his employer; he later amended his complaint to add two supervisors as defendants. Each of the defendants has moved to dismiss. The Court will grant the individual defendants' motions with prejudice and the employer's motion without prejudice.

I. <u>Procedural History</u>

   Richard Stodulski filed this action on June 15, 2010 against Medline Industries, Inc. ("Medline") alleging employment discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq. The plaintiff simultaneously requested appointment of counsel by the Court. The plaintiff amended his complaint on

July 2, 2010 to assert claims against defendants Michael Sjoerdsma, Medline's President of Sales, and Frank Castro, Medline's Vice President for Pennsylvania and Southern New Jersey.  Castro moved to dismiss the amended complaint on August 9, 2010.  The next day, this matter was stayed while the Clerk of Court attempted to obtain counsel for the plaintiff from the employment litigation panel.

After attempts to obtain counsel for the plaintiff were unsuccessful, the case was removed from suspense on October 1, 2010.  On December 10, 2010, the case was returned to suspense during a related Department of Labor investigation.  The plaintiff informed the Court on July 22, 2011 that the DOL investigation had concluded.  The case was taken out of suspense on August 8, 2011.  Medline and Sjoerdsma then separately moved to dismiss the amended complaint.[1]

II.  Facts as Alleged in the Amended Complaint

The plaintiff began working in the sales department of Medline in 2003 after disclosing that he was an individual

---

[1] Medline moved to dismiss the amended complaint because (1) its allegations are time-barred; (2) any allegation that was not time-barred failed to state a claim upon which relief can be granted.  Castro and Sjoerdsma raised similar defenses and added that neither the ADA nor the PHRA permitted individual liability under the facts as alleged.  Castro also moved to dismiss for improper service under Rule 12(b)(5), but because the Court dismisses with prejudice for other reasons, this argument will not be addressed.

diagnosed with Attention Deficit Hyperactivity Disorder and treated with the prescription drug Adderall. After undergoing training, the plaintiff worked in the sales department for Medline in its Pennsylvania and Southern New Jersey territory. He failed to make the sales quota required to avoid a $10,000 commission penalty in 2003 and 2004, but Sjoerdsma told him that it might take several years to improve sales in the long-struggling region. In 2005, however, the plaintiff met his quota and was rewarded with a luxury trip and the repayment of the $10,000 commission penalty. Compl. 1.

In early 2006, Castro began to "strategically" remove accounts with growth potential from the plaintiff's responsibilities. Castro reassigned sales responsibility for Phoenixville Hospital from the plaintiff to another sales associate effective January 1, 2006, which was "[i]nconsistent with policy." Had the hospital not been reassigned, Stodulski "would have met quota" but instead missed out on a $40,000 bonus. Id. 1-2.

Effective January 1, 2007, Castro reassigned responsibility for three Mainline Health System hospitals from the plaintiff to another sales associate after Castro became aware of a $52 million "distribution deal" request for proposals issued by that hospital system. Throughout the year, Mr. Castro continued to pare down the plaintiff's sales responsibilities.

Most significantly to the plaintiff, Mr. Castro had threatened to remove a set of Lourdes Health System accounts from the plaintiff's territory.  This precipitated a December 2007 meeting with Mr. Castro's supervisor, Michael Sjoerdsma, after the plaintiff threatened to file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  Sjoerdsma told the plaintiff that he could seek a transfer of his responsibilities to another area on his own initiative, and Stodulski agreed that he would provide Medline "an opportunity to resolve the matter internally."  Id. 2.

Castro reassigned Lourdes Health System from the plaintiff to another sales representative effective January 1, 2008.  He also reassigned responsibility for Doylestown, Nazareth, and St. Mary's hospitals.  Id.  The plaintiff's last set of allegations of malfeasance occurring before he filed a charge of discrimination with the EEOC occurred in March 2008:

> Mr. Stodulski inquired about transfer[r]ng to a[n] expansion territory of a group of surgery centers in southern California.  However, this opportunity would result in a 50% reduction in earnings.  Moreover, Medline was not engaged in an interactive process.  It was [the] sole responsibility of Mr. Stodulski to accommodate himself[;] the process was far from interactive.  Consequently, Mr. Stodulski was convinced that the idea of a transfer was just a delay tactic[.]

Id.  In June 2008, Medline hired a Human Resources representative, Charmaine Clowney, "to address the Stodulski complaint," but she was fired "a little over a year later."  Id.

at 3. On November 18, 2008, the plaintiff filed his Charge of Discrimination with the EEOC and his charge was assigned Case Number 530-2009-00211.

Following an investigation, the EEOC issued a right-to-sue letter on March 24, 2010. Medline terminated the plaintiff's employment on March 25, 2010. The plaintiff filed his initial complaint on June 15, 2010 and amended it on July 2, 2010. Id. 3-4 & Ex. 1.[2]

III. Discussion

In evaluating a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The court should disregard any legal conclusions and then determine whether the facts alleged are sufficient to show that the plaintiffs have a "plausible claim for relief." Id. If the

---

[2] The plaintiff's complaint also contains a detailed factual description of events occurring following his filing with the EEOC. See, e.g., Compl. 3-4 (detailing Medline's nonparticipation in EEOC factfinding conferences, allegations that Medline's position statement for EEOC investigation was sent to Stodulski as a way to harass him, and Stodulski's termination the day after he received a right-to-sue letter from the EEOC). The Court will not discuss these allegations because the only claims properly before the Court are those found in the EEOC charge. Ostapowicz v. Johnson Bronze Co., 541 F.2d 304, 398-99 (3d Cir. 1976) ("[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the investigation.").

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged, but it has not shown, that the pleader is entitled to relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Where a complaint on its face demonstrates noncompliance with the applicable statute of limitations, a motion to dismiss on that ground should be granted. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (noting the facial noncompliance exception to the Rule 8(c) prohibition on asserting statute-of-limitations defenses in motions to dismiss).

A.   Alleged Discrimination Prior to January 23, 2008

In Pennsylvania, under the ADA, an individual must file a charge of discrimination with the EEOC within 300 days of the discriminatory act to preserve that claim. 42 U.S.C. § 2000e-5(e); Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000). Similarly, under the PHRA, a plaintiff must file a timely complaint with the Pennsylvania Human Resources Commission within 180 days of the discriminatory act to preserve his claim under state law. 43 Pa. Cons. Stat. § 959(h); Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

The plaintiff has argued that his allegations are not time-barred under a "continuing violation" theory, which allows recovery for actions occurring outside of the limitations period

if the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination." West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). In West, the Court of Appeals held in a Title VII case that if a plaintiff can identify at least one act occurring within the limitations period, the plaintiff can invoke the doctrine if he can distinguish the defendants' alleged acts as a "persistent, on-going pattern."[3] Id.

Although the ADA is subject to the "continuing violation" doctrine, discrete acts that are individually actionable must be raised within the applicable limitations period, even if they relate to claims raised in a timely complaint. O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)). These discrete acts include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation," among others. Id. Here, the taking away of the plaintiff's sales responsibilities, if done for the purpose of

---

[3] The West court adopted the Fifth Circuit's approach to ongoing violations and stated the factors to consider in finding a continuing violation. These are: "(i) subject matter-whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence-whether the nature of the violations should trigger the employee's need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate."

discriminating against Stodulski because of his disability, are sufficient to have put him on notice of his need to pursue legal remedy. These actions are more like the "isolated or sporadic acts" identified by the <u>West</u> court than the subtle and cumulative violations for which the continuing violation theory was tailored. <u>See</u> 45 F.3d at 754-55.

Any claims for discrimination that occurred more than 300 days prior to the November 18, 2008 filing of the plaintiff's discrimination charge (i.e., before January 23, 2008) are thus time-barred under both the ADA and PHRA and will be dismissed with respect to all plaintiffs.

B.   <u>Discrimination Occurring After January 23, 2008</u>[4]

Taking the Charge of Discrimination together with the complaint, the remaining allegations of discrimination are those events occurring in March 2008. Specifically, the plaintiff alleges that he inquired about a transfer to another sales territory that would result in a 50% reduction in earnings, but that it was his "sole responsibility" to arrange for that transfer, which he believes in retrospect was just a delay tactic.

---

[4] As noted above, the PHRA and ADA have different limitations periods. The Court finds that the allegations relating to March 2008 are time-barred under the PHRA but not the ADA. The Court will therefore discuss the defendants' arguments that the allegations fail to state a claim.

To state a prima facie case for discrimination under the ADA, the plaintiff must establish that he "(1) has a disability, (2) is a qualified individual, and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (internal quotation marks omitted). Without discussion of the first or second elements of the claim, the Court finds that the plaintiff has failed to plead the third element of a prima facie case for ADA discrimination. The plaintiff's claim of discrimination arising out of the proposed transfer is not an adverse employment action. Indeed, the plaintiff alleges no actions taken by Medline, Sjoerdsma, or Castro that were adverse; the only actions in March 2008 that appear in the EEOC charge were taken by the plaintiff.

Further, if the plaintiff's allegations could be construed to constitute adverse employment action (in the form of failing to facilitate a transfer), the plaintiff has not alleged that these actions were taken as a result of his disability. Cf. Schofield v. Metropolitan Life Ins. Co., 252 F. App'x 500, 503-04 (3d Cir. 2007) (in Family Medical Leave Act retaliation case, finding that "mere requests, offers, or even threats to change positions are not adverse employment actions that warrant recovery") (citing Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 531 (7th Cir. 2003)). The plaintiff will be granted leave

to amend his complaint to state a claim for discrimination against Medline.

### C. Allegations Against the Individual Defendants

The ADA does not provide for individual liability. See Emerson v. Thiel College, 296 F.3d 184, 189-90 (3d Cir. 2002) (quoting Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000) ("the ADA addresses its rules to employers . . . not to the employees or managers of these organizations.")). Under the PHRA, individual liability may lie only where the defendant is a supervisor and the plaintiff alleges an "aiding and abetting" theory of liability. See Dici v. Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996) (noting that the PHRA's separate aiding-and-abetting provision, 43 Pa. Cons. Stat. § 955(e), is the only method for holding employees liable). Because the plaintiff's claims relating to March 2008 are time-barred under the PHRA, and the ADA does not provide for individual liability, all claims against Sjoerdsma and Castro will be dismissed with prejudice.

An appropriate order shall issue separately.