UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD W. STODULSKI, JR.,
    Plaintiff

CIVIL ACTION NO. 10-02870 (MAM)

v.

MEDLINE INDUSTRIES, INC.

**FILED**

JAN 13 2012

MICHAEL E. KUNZ, Clerk
By_____ D:. Clerk

**RE: Amended complaint Richard W. Stodulski, JR. v. Medline Industries Inc. USDC, Eastern District, Civil Action No. 10-02870.**

Now Comes the Pro Se plaintiff, Richard W. Stodulski, JR., with his amended complaint against the defendant, Medline Industries, Inc., states and alleges as follows:

As instructed by the court the Plaintiff amended complaint will identify the adverse employment action he suffered in March 2008 as a result of his proposed transfer, and facts demonstrating that such actions were taken as a result of his disability.

The defendant, Medline Industries Inc., is an employer and covered entity, as defined by the American's with Disabilities Act, 42 U.S.C. 12112 et. seq. ("ADA").

Plaintiff is an otherwise qualified individual with a disability or perceived disability, as defined by the ADA.

That the Defendant actions against the Plaintiff were taken as a result of his disability, Attention Deficit Hyperactivity Disorder in violation of the ADA.

The Defendant, Medline Industries Inc., by its agents and employees violated the ADA and engaged in Disability Discrimination, Hostile Work Environment, Denial of Reasonable Accommodation, and Denial of Transfer maliciously and with reckless indifference to Plaintiff's rights under the American with Disabilities Act.

The Defendant, Medline Industries, failure to facilitate a transfer in March 2008 and subsequent denial of transfer resulted in an Adverse Employment Action to the Plaintiff. Employment actions that have been deemed adverse employment actions for the purposes of Title VII discrimination claims include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguishable title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." R.H. Donnelley, Corp., 368 F.3d at 128 (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

This case also involves the denial of a transfer. As the Second Circuit has noted, "'[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action.'" Id. (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532-33 n. 6 (10th Cir. 1998)). Nevertheless, "[a] lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way." Patrolmen's Benevolent A

Sometime before the December National meeting the Plaintiff e-mailed and sent a facsimile as follows:

> "... I and tolerate many things: hostile work environment, verbal badgering, condescending attitude--personally and in front of customers, rumor milling and isolation from fellow peers. However, when you make derogatory statements about my Mother--implied or otherwise--one is foolish to think that there will be no consequence. Frank has been relentlessly unprofessional and consistently distorts the facts. The most serious issue is the personal attack on my family and friends. One day while I was traveling with Frank, he asked, "Is Denny your Father?" (Denny McGonnigal is a Sr. Vice President and 30 plus years of employment with Medline)

> "I replied, 'What did you say!' Frank responded, 'I did not mean anything by it, I was just trying to understand the relationship between Medline and your family. But you know that Denny has a reputation with the ladies.' I stated that I know who my Father is and he flew A-4's for the Navy."

> "Other representatives have asked me why I tolerate Frank's derogatory comments. He continues to isolate me by limiting information coming to me and telling me he doesn't want me to work for him..."

> "...I stated I did not agree with the decision especially with Lourdes asked if there was anything I could do to at least keep Lourdes. He replied I am tired of waiting. You have had 5 years to get the business. If it was anyone else they would have been gone a long time ago. I stated that I did not agree with the decision..."

> "...I am prepared to file a complaint under the American with Disabilities Act charging that I have been denied equal opportunity through the Equal Opportunity Employment Commission..."

This precipitated a December 2007 meeting with Mr. Castro's supervisor, Michael Sjoerdsma, after the Plaintiff threatened to file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). On January 9th 2008, the Plaintiff received an e-mail from Michael Sjoerdsma approving the plaintiff's request to seek other opportunities within Medline.

Mr. Stodulski discussed an opportunity with David Struve, Senior V.P. West Coast, regarding a transfer to an expansion territory of a group of surgery centers in southern California. On March 20th, 2008 Mr. Stodulski meet with David Struve and regional manager regarding the opportunity and for David Struve to get a feel for Mr. Stodulski as a person. Mr. Stodulski was encouraged to follow up with Mr. Struve as the details of the expansion territory were not available. The progress of Mr. Stodulski's inquiry of the surgery center territory in southern California was communicated to Michael Sjoerdsma by e-mail and telephone through July 22, 2008. Sometime there after Mr. Struve explained to Mr. Stodulski that the expansion territory would result in a 50% reduction in earnings. Moreover, Mr. Struve and Michael Sjoerdsma both explained that there will be no financial support for the transfer and that Medline would not compensate Mr. Stodulski for the income he generated from in his current territory of over 5 years.

Consequently, Medline Industries failed to provide a reasonable accommodation in the form of a transfer. This is an adverse employment action as defined by the Second Circuit Court because the transfer was not truly lateral and involved significant changes in the Plaintiffs conditions of employment--50% reduction in salary--rendering the denial or receipt of the transfer as an adverse employment action.

Moreover, the Plaintiff alleges that Medline Industries actions were a persistent ongoing pattern of Discrimination by penalizing the plaintiff for requesting a transfer and Reasonable Accommodation as indicated in the American with Disabilities Act. The Defendant failure to accommodate a transfer without an Adverse Employment Action was discriminatory against the Plaintiff because of the plaintiff's disability.

Plaintiff was forced to continue working in a hostile environment after the Plaintiff notified Medline of numerous allegations of discrimination due to his disability. After Medline Denied the Plaintiffs request for transfer, the plaintiff suffered additional Adverse Employment Action. Medline forced the plaintiff to remain in the diminishing 149 territory due to Defendants removal of profitable accounts and accounts with growth potential that illustrates a continued pattern of discrimination.

The Defendant failure to facilitate a transfer in March 2008 and subsequent denial of transfer resulted in an Adverse Employment Action to the Plaintiff because of his disability. The Plaintiff suffered a loss of income that continued to decline through 2008 and 2009. The Adverse Employment Action is illustrated in the Plaintiff's income that declined from $120,000 annually to $70,000 annually, a 40 % reduction. The result illustrates a persistent pattern of discrimination against the Plaintiff due to his disability. In addition, Plaintiff did not have the opportunity to enjoy the employment benefits and achievements as other non disabled employees.

An employer must provide reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodations

would impose an undue hardship 42 U.S.C. § 12112(b)(5)(A). A "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, ... and other similar accommodations for individuals with disabilities." Id. § 12111(9).

Moreover, the failure to reasonably accommodate a disabled and qualified employee constitutes an adverse employment action for purposes of the ADA. See Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 771 (3d Cir. 2004).

Employment actions that have been deemed adverse employment actions for the purposes of Title VII discrimination claims include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguishable title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." R.H. Donnelley, Corp., 368 F.3d at 128 (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)). In order to be considered adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.

When Medline denied the transfer the Plaintiff remained in the 149 territory and filed a complaint of Disability Discrimination based on his Disability with the EEOC. Medline failed to provide Plaintiff with a reasonable accommodation and failed to participate in an interactive process. Medline could have fulfilled their obligation to provide a reasonable accommodation to the Plaintiff by moving an account or accounts with guaranteed business growth as Medline has done for other similarly situated non disabled representatives. Plaintiff can prove that Medline has moved accounts with guaranteed sales growth to other non-disabled representatives to the Plaintiffs detriment. However, Medline refused to provide a reasonable accommodation to the Plaintiff and illustrates pretext to hide discrimination and illustrates a persistent ongoing pattern of discrimination against the Plaintiff.

Medline failed to provide Plaintiff any form of reasonable accommodation is pretext to hide Discrimination. Medline deliberately and with malice denied the plaintiff a reasonable accommodation and discriminated against the Plaintiff as a result of his disability. By not giving the Plaintiff equal opportunity at success enjoyed by non disabled representatives. Medline motive for denying Plaintiff of a reasonable accommodation was to cover up Discrimination. The cover up was achieved by refusing to provide a reasonable accommodation by claiming no knowledge of the Plaintiffs Disability. Medline believed that if they had no knowledge of the Plaintiffs Disability then Medline could not have discriminated against the Plaintiff as a result of his Disability. Medlines' motive is clearly illustrated in Medline's Position Statement to the EEOC where Medline unequivocally denied any knowledge of Plaintiffs Disability.

At no time after the denial of transfer did Medline offer the Plaintiff a reasonable accommodation. Not even after the EEOC investigator inquired about a reasonable accommodation for the Plaintiff in the second request for additional information of December 7th, 2009.

Wherefore, Plaintiff, Richard W. Stodulski JR, respectfully requests that this Honorable Court enter an Order for the following Relief:

Front Pay, Back Pay, Compensatory and Punitive damages to make the plaintiff whole as allowed under the ADA.

Sincerely and Best Regards,

*[signature]* 1/13/12

Pro Se Plaintiff Richard W. Stodulski JR.

5